IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JCB, LEE ANN BOYER,**<br>        **Plaintiffs,** | **CIVIL ACTION** |
| v. | |
| **QUAKERTOWN COMMUNITY**<br>**SCHOOL DISTRICT,**<br>        **Defendant.** | **NO. 23-cv-372** |

## MEMORANDUM

**HODGE, J.**                                                                                                       December 12, 2025

Plaintiff Lee Ann Boyer, on behalf of herself and her minor son, JCB (collectively, "Plaintiffs"), brings a due process claim against the Quakertown Community School District ("Quakertown") for alleged denial of Free Appropriate Education ("FAPE"). The Hearing Officer denied her claim, which Plaintiffs appealed in this case. Quakertown moved for summary judgment on the administrative record for all claims. (ECF No. 25.) Plaintiffs opposed and instead asserted that summary judgment should be entered in their favor. (ECF No. 28.) For the following reasons, Quakertown's Motion is granted.

**I.      BACKGROUND**[1]

   **A.      Factual Background**

While attending preschool at Bucks County Intermediate Unit #22 ("IU"), JCB received an Early Intervention Evaluation due to concerns regarding social emotional and cognitive skills. (ECF No. 17-8 at 4.) He was evaluated by Dr. Marsha Gerdes through the Children's Hospital of Pennsylvania. (*Id.*) As a result of the evaluation, JCB was diagnosed with "Developmental Delay,"

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

which made him eligible to receive specially designed intervention/instruction ("SDI") through Early Intervention Services ("EI"). (*Id.* at 17.) His Individualized Education Program ("IEP") dated July 23, 2019, noted minimal behavior issues at school, but that JCB needed support and instruction in his ability to initiate social interactions. (*Id.* at 24.) JCB was reevaluated in January 2020. (*Id.*) His IEP dated February 20, 2020 provided JCB with speech therapy for thirty minutes per week, and specialized instruction for 1.25 hours twice per week during preschool. (*Id.*) These services were provided as "push-in" services—that is, JCB would not be removed from the general classroom to receive these services, but the staff would integrate them into the general classroom. (ECF No. 17-6 at 85; ECF No. 17-9 at 13.)

In preparation for JCB's transition out of preschool, Quakertown initiated an evaluation to determine the SDI he would require for kindergarten. (ECF No. 17-8 at 22; 33.) A transition meeting occurred in December 2019 regarding this reevaluation, and his reevaluation began in January 2020. (*Id.* at 23–24.) However, due to mandated school closures as a result of the COVID-19 pandemic, assessments were not able to be completed for JCB's IEP in the spring of 2020. (*Id.*)

JCB underwent the Developmental Assessment of Young Children-Second Edition ("DAYC-2") testing, which is a norm referenced test, in January 2020. (*Id.* at 28.) JCB received a score slightly below average in the area of cognitive skills of the DAYC-2. (*Id.*) While the report noted that he "has a history of a social-emotional delay," it further noted that his score on an assessment of social-emotional development fell within the average range. (*Id.*) The April 2020 report from Dr. April Fisher, Certified School Psychologist, recommended the IEP team consider JCB's need for speech therapy to assist his ability to communicate, and specialized instruction to provide support in the area of social/emotional development. (*Id.* at 24.) The report further noted:

> The absence of teacher input, observations, and assessment data as a result of mandated school closures in response to the COVID-19 pandemic makes decisions

2

>regarding eligibility category under school-age criteria, educational needs, and present levels inconclusive. It is recommended that the IEP team adopt [JCB's] current early intervention IEP for his entry into kindergarten, and once he is attending school, issue a Permission to Reevaluate in order to collect the originally planned assessments.

(*Id.* at 30.)

Quakertown proposed an initial IEP dated May 12, 2020 for the upcoming kindergarten year. (*Id.* at 36.) The IEP outlined three goals: a speech-specific goal, a goal related to following directions, and a goal related to social play. (*Id.* at 53–56.) To effectuate these goals, the IEP listed five modifications and SDI—three of which were to occur in all educational environments, and two of which were for speech sessions. (*Id.* at 58.) The IEP did not specifically identify who would provide the SDI. Carolyn Staffieri ("Staffieri"), Supervisor of Special Education at Quakertown, testified that the SDIs for "all educational environments" are "not specific to just a special education classroom"; but rather, "[a]nywhere that student is, the staff working with that child are expected to give [the SDI]." (ECF No. 17-6 at 23.)

JCB's parents rejected the initial IEP. (ECF No. 17-8 at 68.) In Mrs. Boyer's response to the Notice of Recommended Educational Placement ("NoREP"), she indicated that JCB "still needs IEP for services other than speech. I want to use his previous IEP." (*Id.*) Mrs. Boyer met with district representatives, early intervention staff, and an outside consultant on July 13, 2020, to review JCB's IEP and address her concerns. (*Id.* at 75.) During the meeting, Mrs. Boyer requested an occupational therapy evaluation to address sensory concerns. (*Id.*) The meeting summary notes that "Mrs. Boyer firmly believes [JCB] needs other supports and services beyond speech." (*Id.*) Following the July meeting, eight modifications and SDI were added to JCB's IEP. (*Id.* at 93–94.) Mrs. Boyer approved the modified IEP on July 20, 2020 (*id.* at 107), though she

testified that she only approved it because she was told if she did not sign the IEP, JCB would not receive services when school started. (ECF No. 17-6 at 12.)

JCB attended kindergarten at his neighborhood elementary school within Quakertown during the 2020–2021 school year. (ECF No. 25-1 ¶ 2.) There was a late start to the school year because of COVID-19, and so JCB did not begin kindergarten until September 14, 2020. (ECF No. 17-6 at 24.) Quakertown issued a notice for reevaluation of JCB's IEP on September 25, 2020. (ECF No. 17-8 at 109.)

In early October, JCB began displaying instances of behavioral dysregulation. He would refuse to wear his mask, elope from the classroom, and engage in destructive conduct such as flipping tables and throwing objects. (*E.g.*, ECF No. 17-11 at 21–22, 31, 49.) On October 2, 2020, a staff member needed to physically restrain JCB after he struck a staff member. (ECF No. 17-8 at 361–72.) In an email from Mrs. Boyer to Staffieri following the incident, Mrs. Boyer wrote, "He has never acted like that at the IU, at daycare or at home. I couldn't even get him 3 days a week at the IU because of lack of behavior problems." (*Id.* at 377.) On October 9, 2020, Quakertown added a Functional Behavior Assessment to JCB's proposed IEP reevaluation. (*Id.* at 112.) Further IEP meetings were held in late October and November, and six new SDIs were added to JCB's IEP to address his difficulty staying in the classroom, wearing his mask, and following directions. (*Id.* at 158, 177.)

Quakertown issued its IEP reevaluation report on December 4, 2020. (*Id.* at 184.) The report concluded that JCB continued to need SDI, and noted his primary disability category as emotional disturbance, and his secondary disability category as speech or language impairment. (*Id.* at 200.) An IEP meeting was held on December 16, 2020. (ECF No. 28-1 at 6; ECF No. 17-8 at 277.) Following the conclusions from the reevaluation, Quakertown developed a revised IEP in

January 2021. (ECF No. 17-8 at 220.) The NoREP was sent on January 27, 2021. (*Id.* at 270.) The new IEP was implemented in February following approval of the revised IEP by the Boyers on February 4, 2021, and Mrs. Boyer stated that JCB's behavior "improved drastically and consistently" following its implementation. (ECF No. 17-6 at 16.)

Mrs. Boyer filed a Due Process Complaint in June 2022. (ECF No. 17-12.) In her complaint, she asserted that the school would not include supports for JCB in the IEP that were contained in his previous IEP at the IU other than speech. (*Id.* at 2.) On August 12, 2022, a due process hearing was held before Pennsylvania Special Education Hearing Officer Charles W. Jelley Esq. (ECF No. 17-6.) Hearing Officer Jelley issued a Final Decision and Order on October 31, 2022, denying all of Mrs. Boyer's requests. (ECF No. 17-3.)

### B.  Procedural Background

Mrs. Boyer appealed the Hearing Officer's determination and sought additional relief including attorney's fees. (ECF No. 1). Quakertown and Defendant Staffieri moved to dismiss the complaint. This Court partially granted the motion to dismiss, removing Staffieri with prejudice and allowing Plaintiffs to amend claims for compensatory education and attorney's fees. (ECF No. 10). Plaintiffs filed an "Amendment to Claims," which included claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), and unspecified state anti-discrimination laws. (ECF No. 12.)

## II.  LEGAL STANDARD

In Pennsylvania, if parents disagree with a school district's provision of a FAPE, they may request a due process hearing conducted by a hearing officer. 20 U.S.C. § 14.162(b). A parent may appeal that decision to a court of competent jurisdiction. *Id.* § 14.162(o). When the aggrieved party initiates a civil action in a federal district court, the court "(i) shall receive the records of the

administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

The Court applies a "modified *de novo* standard of review" in reviewing a state hearing officer's administrative decision under the IDEA. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012). The hearing officer's findings in a due process hearing must be afforded "due weight," as federal courts cannot "impos[e] their own view of preferable educational methods on the states." *D.S. v. Bayonne Bd. Of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). The "due weight" standard mandates that "[f]actual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obligated to explain why." *Id.* The Court exercises plenary review over the Hearing Officer's legal conclusions. *J.D.G. v. Colonial Sch. Dist.*, 748 F. Supp. 2d 362, 372 (D. Del. 2010).

Under the IDEA, "the party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012). The Court must make its own findings by a preponderance of the evidence. *Shore Reg'l High Sch. Bd. Of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004).

The remaining non-IDEA claims are subject to the summary judgment standard of review set forth in Rule 56(a). Under this rule, a district court must grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the movant is the defendant, they have the burden of demonstrating the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the

record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

Quakertown argues that the Hearing Officer's decision on Mrs. Boyer's IDEA claims should be affirmed because she failed to establish preponderant proof of a denial of FAPE. Additionally, Quakertown argues that Mrs. Boyer cannot bring her non-IDEA claims on behalf of JCB *pro se*. Moreover, even if Mrs. Boyer can proceed with her non-IDEA claims, Quakertown argues that those claims fail as a matter of law because she is required to show intentional discrimination under Section 504 and the ADA, which she has not shown.

### A. Mrs. Boyer's Representation of her Minor Child in Federal Court

In *Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991), the Third Circuit held that a non-lawyer parent cannot represent their child in place of an attorney in federal court. This decision joined other courts of appeals finding that while there is a right to choose to represent oneself in litigation, "[t]he right to counsel belongs to the children, and . . . the parent cannot waive this right." *Id.*

Whether Mrs. Boyer can proceed in representation does not turn, as she suggests, on whether the rights at stake are broad civil rights issues or specific to special education. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (1994) does not provide non-attorney parents with a right to represent their child in federal court for claims related to special education.

7

Rather, *Winkelman* holds that parents themselves have rights under IDEA, and as such, are "entitled to prosecute IDEA claims *on their own behalf.*" *Id.* at 535 (emphasis added). *Winkelman* reserved the question of whether parents could pursue their children's IDEA claims *pro se*. *Id.*

Because Mrs. Boyer cannot waive JCB's right to counsel, she can only proceed *pro se* with claims brought on her own behalf. Claims on behalf of JCB must be dismissed without prejudice. *See Osei-Afriyie*, 937 F.2d at 883.

### B.    IDEA

The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). A FAPE is "an educational instruction 'specially designed . . . to meet the unique needs of a child with a disability,' coupled with any additional 'related services' that are 'required to assist a child with a disability to benefit from [that instruction].'" *Winkelman*, 550 U.S. at 524 (quoting 20 U.S.C. § 1401).

School districts are required to develop an IEP tailored to the child in order to ensure every qualifying child receives a FAPE. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982). "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *D.S.*, 602 F.3d at 557 (internal quotation omitted).

The appropriateness of an IEP must be determined based on data known or that should have been known by the school district at the time it was offered. *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 533–34 (3d Cir. 1995). An IEP must provide a "basic floor of opportunity" for the child; it is not required to provide the student with the best possible program. *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 251 (3d Cir. 2009); *Ridley*, 680 F.3d at 269.

Mrs. Boyer challenges the Hearing Officer's determination as being based on inaccurate facts. (ECF No. 1 at 2.) She further challenges the determination as lacking a valid "Final Order" because the order was copied from JCB's brother's Final Order,[2] and did not state anything regarding JCB. Quakertown asserts that the Hearing Officer's decision should be affirmed because no records suggest JCB required emotional support services prior to January of his kindergarten year and new behaviors do not render a prior IEP inappropriate. Further, Quakertown asserts that under the standard of review of the Hearing Officer's factual determinations, Mrs. Boyer's alleged factual errors are narrow disagreements that do not meet the required standard.

This Court agrees that Mrs. Boyer has not presented sufficient evidence to justify departure from the findings of the Hearing Officer. It is her burden to present compelling evidence to justify this departure. *JKG v. Wissahickon Sch. Dist.*, No. 2:19-cv-05296, 2021 WL 1122526, at *5 (E.D. Pa. Mar. 24, 2021). Instead, she simply claims that the testimony of Staffieri should not have been relied upon by the Hearing Officer, but offers no adverse testimony nor evidence to the contrary.

Mrs. Boyer's primary disagreement is with Fact 14 in the Hearing Officer's Opinion. Specifically, the Hearing Officer states that the May 12, 2020 IEP provided that JCB "should participate in a general education kindergarten classroom with the support of a special education teacher, a speech therapist, and classroom-based instructional aides." (ECF No. 17-3 at 5.) In her disputed facts, Mrs. Boyer states that "[t]he school did not provide [a] special education teacher nor were aides assigned to him as per his IEP." (ECF No. 28-1 at 3.)

On this singular fact, this Court disagrees with the Hearing Officer. The records cited do not support that the IEP directed the support of a special education teacher and classroom-based

---

[2] Mrs. Boyer also brought a case regarding JCB's twin brother's IEP. *See J.R.B. v. Quakertown Community Sch. Dist.*, No. 23-373 (E.D. Pa.).

9

instructional aides. Rather, testimony at the due process hearing supports that the IEP directed that support was to be provided by all staff working with the child. (ECF No. 17-6 at 23.) The IEP itself is not framed as who will provide the SDI, but instead what the SDI is, where it will occur, and how frequently. (ECF No. 17-8 at 58.) Not until January 2021 does JCB's IEP specify that support will be provided by special education teacher and/or instructional aides. (ECF No. 17-8 at 264.)

However, this revision does not affect the Hearing Officer's underlying conclusion. Parents do not have a right to compel a school district to provide a specific methodology. *See K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F. Supp. 2d 806, 813–14 (E.D. Pa. 2011). Whether JCB received a FAPE does not turn on whether a classroom aide assigned to JCB provided the SDI or if all staff provided that SDI. The purpose is to ensure that SDI was provided and if so, FAPE was met.

Other disputes of fact raised by Mrs. Boyer are minor disagreements that do not affect the determination of fact. For instance, Fact 3 states that JCB was found eligible for and received early intervention services due to a developmental delay. (ECF No. 17-3 at 2–3.) Mrs. Boyer asserts that she proved there were other delays. However, the underlying document supports that JCB was found eligible for early intervention due to "developmental delay." (ECF No. 17-8 at 17.)

Mrs. Boyer's principal dispute with JCB's IEP is that it did not provide for emotional support until February 2021 even though the school district was aware of this need. Data available to the school prior to kindergarten supported that JCB's behavioral and emotional state was average. While prior documents reference JCB's social-emotional delay (e.g., ECF No. 17-8 at 24), these documents also noted that he had minimal behavior issues at school. There is no evidence of JCB exhibiting behavioral dysregulation prior to kindergarten. Because an IEP is designed based on data available at the time, it was appropriate for Quakertown to not provide this

behavioral support prior to evidence of a need for that support. The continuous review of a student's IEP and possible need for re-assessment and revision is common and expected as the child develops, and differing needs may manifest themselves that warrant a revision in services. When this is done, it does not evidence that a previous IEP is inherently deficient.

The Hearing Officer properly determined that the multiple iterations of IEPs for JCB complied with the procedural and substantive requirements of the IDEA because they were based on the data presented to the IEP team, incorporated the Parent input and desires, and were reasonably calculated to provide meaningful benefit. No evidence has been presented that JCB's parents were prevented from meaningfully participating in the IEP process.

### C.    Section 504 and ADA

Plaintiffs' amendment to claims adds claims under Section 504 and the ADA. (ECF No. 12.)[3] It is not clear if Mrs. Boyer brings any of these claims on her own behalf or exclusively on behalf of JCB. Because a *pro se* plaintiff's pleadings are held to a less stringent standard than that of pleadings from a lawyer, *Chughtai v. Obama*, 153 F. Supp. 3d 765, 768 n.4 (E.D. Pa. 2015) (citing *United States v. Bradley*, 505 F. App'x 220, 221 n.1 (3d Cir. 2012)), the Court will interpret Mrs. Boyer to be bringing all claims on behalf of herself and JCB because she identifies herself and JCB as Plaintiffs.

Courts in this circuit have read *Winkelman*'s application of standing for parents under the IDEA to apply to Section 504 and ADA claims where those claims are closely intertwined with the IDEA claim. *See Annika T. v. Unionville Chadds-Ford Sch. Dist.*, No. 08-4944, 2009 WL

---

[3] The amendment to claims also raised unspecified state anti-discrimination claims. However, Mrs. Boyer never clarified what these claims referred to and only addresses Section 504 and ADA claims in her opposition to summary judgment. She therefore has not provided any evidence or argument to support these state anti-discrimination claims.

11

778350, at *4 (E.D. Pa. Mar. 24, 2009); *A.G. v. Lower Merion Sch. Dist.*, No. 11-5025, 2011 WL 6412144, at *4 (E.D. Pa. Dec. 20, 2011) (collecting cases); *see also Woodruff ex rel. B.W. v. Hamilton Twp. Pub. Sch.*, No. CIV.A. 06-3815, 2007 WL 4556968, at *4 (D.N.J. Dec. 20, 2007) (finding *Winkelman* inapplicable where plaintiffs did not bring an IDEA claim). Because Mrs. Boyer has also brought an IDEA claim, and all claims arise from the same set of facts, they are deeply intertwined such that she has standing to pursue claims under Section 504 and the ADA.

Quakertown argues at summary judgment that Mrs. Boyer has not presented any evidence to establish claims under Section 504 and the ADA. In response, Mrs. Boyer argues that the administrative record supports that Quakertown knew that JCB had emotional disturbance before he began kindergarten and yet did not provide services until February 2021, constituting deliberate indifference in violation of Section 504 and the ADA.

Section 504 is the mirror image of the IDEA: while the IDEA imposes an affirmative duty to provide FAPE, Section 504 imposes a prohibition against disability discrimination. *See Annika T.*, 2009 WL 778350 at *3. To establish a claim under Section 504 and the ADA, both governed by the same standard, a plaintiff must demonstrate that: (1) he has a disability, or was regarded as having a disability; (2) he was "otherwise qualified" to participate in school activities; and (3) he was "denied the benefits of the program or was otherwise subject to discrimination because of his disability." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). A plaintiff seeking compensatory damages like Mrs. Boyer must also demonstrate that the discrimination was intentional, which can be satisfied by establishing deliberate indifference. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014). Deliberate indifference requires a deliberate choice and cannot be established by mere negligence or bureaucratic inaction. *Id.*

Mrs. Boyer has not established deliberate indifference by Quakertown. As discussed above, the data available to Quakertown prior to JCB's start in kindergarten supported that his behavioral and emotional state was average and that he had minimal behavior issues at school. Mrs. Boyer has presented no evidence of JCB exhibiting behavioral dysregulation prior to kindergarten. When JCB began exhibiting behavioral dysregulation, Quakertown added a Functional Behavioral Assessment to JCB's IEP reevaluation. There is no evidence that Quakertown knew of JCB's behavioral dysregulation and chose to wait until fall 2020 to conduct this testing. While most of JCB's testing for his IEP reevaluation was delayed due to COVID-19, even if such testing could have uncovered the need for emotional support at the start of kindergarten, Quakertown's delay does not constitute deliberate indifference. Further, Quakertown made adjustments to the IEP in July 2020 following the NoREP and additional input from JCB's parents. Thus, there is no evidence that Quakertown made a deliberate choice to deny JCB support for emotional disturbance that they were aware he needed.

## IV. CONCLUSION

While starting kindergarten is a challenge for many children, for JCB, the challenges resulted in behavioral dysregulation. Following his revised IEP in February 2021, JCB improved drastically. The Court commends Mrs. Boyer for advocating on behalf of her son throughout the IEP process and due process hearing. However, the law does not provide her the remedy she seeks. For the foregoing reasons, Quakertown's Motion for Summary Judgment is granted. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
--------------------------------
HODGE, KELLEY B., J.